J-A18030-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| S.B. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| S.S. | |
| Appellant | No. 74 WDA 2017 |

Appeal from the Order December 12, 2016
In the Court of Common Pleas of Allegheny County
Family Court at No(s): FD-15-008183-10

BEFORE:   BOWES, J., LAZARUS, J., and OTT, J.

MEMORANDUM BY LAZARUS, J.:                  FILED OCTOBER 20, 2017

S.S. ("Mother") appeals from the order, entered in the Court of Common

Pleas of Allegheny County, awarding S.B. ("Father") sole legal custody and

sole physical custody of F.B.H. ("Child") (born August 2006).  After our review,

we affirm, with instructions.

Child was born in Guatemala in 2006.  Father and his first wife, A.H.,

who were married for almost twenty years, adopted Child in 2007, when he

was six months old.[1]  A.H. died in December 2008, when Child was two years

_____

[1]  A.H. was diagnosed with breast cancer in 1999 and underwent
chemotherapy.  She and Father wanted to start a family, and they began the
adoption process in 2003.  They contacted Palmetto Hope, an adoption agency
that specializes in Guatemalan adoptions, and after going through a home
study with Jewish Family Services in Pittsburgh and meeting the Palmetto
Hope requirements, the adoption was finalized in February 2007.  N.T. Trial,
5/20/16, at 176-78.

old. Father continued his close relationship with A.H.'s extended family, and he raised Child, with their support, for the next four years. In May 2012, Father met Mother on an online dating website; they married four months later. Mother adopted Child in 2013.

The parties' relationship was short-lived; in November 2013, Mother moved out of the main house and into the guesthouse. One year later, Mother left the marital residence and moved into her own home. The parties entered into a custody agreement on November 22, 2014.

Father filed a complaint in custody on June 11, 2015; Mother counterclaimed for primary custody. On October 9, 2015, the court held a hearing and entered an interim custody order pending a custody trial. The interim order expanded Father's custodial time. Days later, Mother filed a Petition for Abuse (PFA), on behalf of herself and Child, alleging Father had sexually abused Child, and the court ordered supervision of Father's custodial periods. Over one month later, after a five-day trial, the court dismissed the PFA petition.

On January 21, 2016, the court scheduled a custody trial to be held in April of that year; on February 2, 2016, Mother filed a second PFA petition on behalf of herself and Child, again alleging Father's sexual abuse of Child.[2]

_____

[2] On February 4, 2016, Mother filed an emergency petition for special relief, indicating Child made additional disclosures of sexual abuse and that Child was refusing visits with Father. The court suspended visitation and contact between Father and Child. That same day, the court appointed Maegan Susa

Senior Judge Lee J. Mazur denied the petition without a hearing and recommended the petition be presented again before the Honorable Kim Berkeley Clark, who was presiding over the custody matter. Judge Clark denied the petition without a hearing.

The twenty-three day custody trial commenced on May 20, 2016, and concluded on November 18, 2016. The parties presented 24 witnesses and offered 216 exhibits, 193 of which were admitted by the court, in addition to the exhibits from the PFA trial that were incorporated into the custody trial.

On December 12, 2016, Judge Clark entered her findings of fact on the record and entered an order granting Father sole legal and sole physical

_____

Filo, Guardian ad litem (GAL), to represent Child's best interests. On April 11, 2016, after meeting with the parties, Child, communicating with counsel for both parties, reviewing expert reports, GAL made several recommendations, including the following:

> Child be immediately removed from Mother's care and placed with Father after attending the Family Bridges program;
>
> Child should be immediately reunited with A.H.'s extended family;
>
> Child should begin attending his former synagogue;
>
> Child should begin to attend his Guatemalan adoption group in which he participated previously with Father;
>
> Father should be granted sole legal custody of Child;
>
> Both Mother and Father should follow any recommendations made by Dr. McGroarty for each party's mental health therapy.

Report and Recommendation of the Guardian ad litem, 2/4/16, at 8.

- 3 -

custody. On December 14, 2016, the court entered an amended order, which provides:

1. Sole legal custody of [Child] is awarded to [Father] who shall have the sole authority to make all medical, therapeutic, educational, and religious decisions on behalf of the child. Father is hereby authorized to obtain treatment/intervention for [Child], as he deems necessary and appropriate for [Child's] welfare.

2. Father shall have sole physical custody of the Child.

3. Father shall pursue reunification with the Child through Family Bridges: A Workshop for Troubled and Alienated Parent-Child Relationships ("Family Bridges").

4. Following the completion of the Family Bridges workshop, and before returning home with [Child], Father shall take [Child] on a vacation of no less than five days in duration. The Court expects that [Child] will apply what he has learned during the Family Bridges workshop to improve their interactions with his Father during and following their vacation.

5. Father has the right to conceal from Mother the location of any intervention sought for [Child] (e.g., educational or mental health intervention) in the interests of protecting [Child] and the intervention from intrusion, interruption, and harassment.

6. Following the completion of the Family Bridges workshop, Family Bridges or the aftercare Specialist shall provide recommendations as to the next steps for the parties (counseling, contact, etc.)

7. Until such time as the Child can be taken to the Family Bridges Workshop, [Child] shall be cared for by [S.B. and S.B.]. If possible, Mr. or Mrs. B[.] shall pick the child up from school. A copy of this Order shall be provided to the school, if necessary.

8. Defendant, [Mother] shall cause to be delivered by a third party: clothing flor [Child] for two; (2) weeks, his birth certificate and citizenship papers, and his most important personal effects to the home of [S.B. and S.B.]. Personal effects should include, at a minimum, stuffed animals [Child] sleeps with, pajamas, his school backpack, books he is

currently reading, his school folder with current assignments, and his iPad with his favorite games on it. Said items shall be delivered by 7:00 P.M. December 12, 2016.

9. Mother is to ensure that all of [Child's] remaining belongings are delivered by a third party to Father's home or other agreed upon location within 14 days.

10. Father is authorized, if he deems necessary and/or appropriate, to hire or designate other persons to facilitate and assist with the transfer of [Child] to the location where any intervention will be conducted. [S.B. and S.B.] are expressly authorized to travel with the Child.

11. Father has the sole authority to consent to [Child's] travel.

12. A copy of any custody evaluations and other evaluations of [Child] and/or the parties and all other relevant information shall be provided to any professional whom Father engages to assist with [Child], including Family Bridges team leaders.

13. [Child] shall have no contact with Mother, her family, or her friends and/or associates not participating in the intervention, and relatives, friends, and associates of Mother, and any parents of [Child's] friends whose influence might foreseeably interfere with [Child] progress in effectively repairing the damaged relationship with Father, except as directed by Family Bridges, or the aftercare professional, or any other professional designated by Father or the Court.

14. "Contact" includes all forms of contact and communication, including but not limited to phone contact, text messages, letters, contact via computer, in-person contact, and communication via third parties.

15. The duration of the no-contact order shall be determined by the Court, but shall be no less than 90 consecutive days from return of the family to the home of the custodial parent, or other designated post Family Bridges residence after the successfully completion of the structured Family Bridges workshop and the post Workshop vacation period.

16. Should any person subject to the no-contact order have contact with [Child] prior to the expiration of the Court-imposed 90-day no-contact period, the period of no contact begins again. For example, if on day 45 Mother and [Child]

have any form of contact that is prohibited by the Court Orders, the clock counting down the 90 day period of no contact is reset to zero and the 90 consecutive day period of no contact begins anew. For each subsequent incidence of parent-child contact prior to the expiration of the no-contact period, the clock will be reset to zero until 90 consecutive days have passed without parent-child contact.

17. Father, through counsel, shall notify the court when he and [Child] have returned to live in father's residence in Allegheny County within 72 hours of their return. Upon notification, that [Child] and Father have returned, the court will schedule and hold a judicial conference to determine what other therapeutic interventions, if any, should be ordered and to determine Mother's partial custody. The Court will determine the conditions, timing, and nature of resumption of contact between [Child] and Mother with the assistance and input from the aftercare professional.

18. The resumption, timing and nature of contact between [Child] and Mother will be based on the cooperation of [Child] and Mother with these Orders, with the Family Bridges program, and with the aftercare professional, after a judicial conference upon praecipe by either party following the completion of the 90-day period.

19. Father has the authority to confiscate and prevent [Child's] use of communication devices; including but not limited to: cell phone, pagers, blackberries, tablets, and computers, even if Mother provides such equipment.

20. If the child is ill and must be hospitalized or unable to leave the home, the custodial parent shall notify the non-custodial parent as soon as possible, but no later than within 24 hours.

21. During the no-contact period, Mother shall stay at least 100 yards away from Father and [Child], their residence, the residences of members of Father's and the H[.] families, Father's vehicle, and all other places frequented by [Child]. Until further Order of' Court, Mother shall not be on the grounds of Shadyside Academy Junior School.

22. Mother shall not harass, attack, strike, threaten, assault, hit, follow, stalk, molest, destroy personal property, disturb the peace, keep under surveillance, or block movements of Father and/or [Child].

23. Mother shall relinquish to Father, [Child's] passport, citizenship papers, the original adoption papers, birth certificate, and all other important documents and shall be entitled to obtain and/or renew [Child's] passport without Mother's consent. Father shall have possession and control of these documents.

24. Neither party shall subpoena the records of any of the professionals who assist the Father and [Child] in making the transition to the Court Orders, including Family Bridges team leaders, nor shall either party seek testimony in any future Court hearings by Family Bridges team leaders. This does not prohibit Family Bridges team leaders from communication with aftercare professionals and any professionals, such as guardians ad litem, appointed by the Court.

25. Neither parent will go to the home or office of a Family Bridges team leader unless for prescheduled appointments, nor approach the Family Bridges team leaders at any time in public, nor phone excessively, nor send threatening communications.

26. Neither party shall relocate outside of Allegheny County with the child, without notice to and the written consent of the other party OR with permission from this court. Any party seeking relocation shall strictly adhere to the requirements of 23 Pa.C.S.A. § 5337.

27. The police and/or other law enforcement agencies shall enforce the terms of this Order and lend all necessary assistance, if necessary, to allow Father to maintain sole custody of [Child], and enforce the no contact order.

28. The matter of Counsel Fees shall be set for argument before this court.

29. This order supersedes all other orders previously entered in this case.

Amended Order, 12/14/16 (emphasis in original).

On December 27, 2016, the court filed detailed Findings of Fact in support of its order. The court also filed an opinion analyzing each witness's

testimony, including the testimony of Child and the guardian ad litem, and applying the statutory custody factors. Mother filed a timely appeal on January 13, 2017.[3] She raises the following issues for our review:

1. Did the trial court err as a matter of law or abuse its discretion in finding that the parties' child was not sexually abused by Father?

2. Did the trial court err as a matter of law or abuse its discretion in finding it to be in the Child's best interest that he be placed in Father's sole custody and in severely restricting Mother's custody, contact, and involvement in his life?

3. Did the trial court err as a matter of law or abuse its discretion in using the dictates and demands of the Family Bridges program protocol as the basis for the details of the custody order regarding the suspension of Mother's custody and contact, in delegating decision-making authority to such a program, and in prohibiting Mother from subpoenaing the Family Bridges records and from procuring future testimony from Family Bridges personnel, and was such a deprivation of her state and federal constitutional due process and parental rights?

Appellant's Brief, at 10.

In any custody case decided under the Custody Act, 23 Pa.C.S.A. §§ 5321–40, the paramount concern is the best interests of the child. See 23 Pa.C.S.A. §§ 5328, 5338. Section 5338 of the Act provides that, upon petition,

_____

[3] Mother filed an "Application for the Exercise of King's Bench Power or Extraordinary Jurisdiction" in the Pennsylvania Supreme Court on February 1, 2017. See 42 Pa.C.S.A. § 726. Father filed an answer on February 8, 2017. The Supreme Court denied Mother's application on February 24, 2017 by per curiam order. S.B. v. S.S., 8 WM 2017, filed 2/24/17. Mother's appeal was argued before this Court on July 19, 2017.

a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S.A. § 5338; see also E.D. v. M.P., 33 A.3d 73, 80–81 n.2 (Pa. Super. 2011). Section 5328(a) sets forth a list of sixteen factors[4] that the

_____

[4] § 5328. Factors to consider when awarding custody

(a) Factors.—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors

which affect the safety of the child, including the following:

(1)  Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2)  The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1)  The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3)  The parental duties performed by each party on behalf of the child.

(4)  The need for stability and continuity in the child's education, family life and community life.

(5)  The availability of extended family.

(6)  The child's sibling relationships.

(7)  The well-reasoned preference of the child, based on the child's maturity and judgment.

(8)  The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where

trial court must consider when making a "best interests of the child" analysis for a custody determination. See 23 Pa.C.S.A. § 5328(a). Moreover, section 5323(d) mandates that, when the trial court awards custody, it "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d).

_____

reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

The relevant scope and standard of review are as follows:

[T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. . . . However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. . . . Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

R.M.G., Jr. v. F.M.G., 986 A.2d 1234, 1237 (Pa. Super. 2009) (quoting Bovard v. Baker, 775 A.2d 835, 838 (Pa. Super. 2001)). Moreover, on issues of credibility and weight, we defer to the trial court, which has had the opportunity to observe the proceedings and demeanor of the witnesses. R.M.G., Jr., supra at 1237.

The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

Id. (internal citations omitted). In sum, this Court will accept the trial court's conclusion unless it is tantamount to legal error or unreasonable in light of the factual findings. S.W.D. v. S.A.R., 96 A.3d 396, 400 (Pa. Super. 2014).

After our review, we conclude that Mother's claims are meritless. The core of this custody case is not allegations of sexual abuse; it is isolation and alienation. Child's vulnerability and susceptibility to Mother's influence was

not lost on Judge Clark, and it is not lost on this Court. Our review of the record indicates that Mother has systematically engineered an isolation plan, at Child's psychological expense.

Judge Clark's opinion provides a careful and detailed examination of the evidence, see Trial Court Opinion, 12/27/16, at 8-51, and a comprehensive analysis of each of the section 5328(a) factors. See id. at 52-55. The court determined there was no evidence that Father sexually abused Child. In making this determination, the court considered Child's relationship with Father and with Mother both before and after the allegations of sexual abuse, the timing of the abuse allegations, the parties' psychological testing reports, the testimony from the GAL, family members, friends, former babysitters and neighbors, as well as the expert testimony from the custody evaluator, from Child's therapist and forensic interviewers, and Mother's therapist. The court also found that Child was alienated from Father by Mother, id. at 51, and that the extent of alienation in this case warranted a restrictive and intensive reunification program. Contrary to Mother's claim, the trial court did not delegate its duty; our instructions below reinforce the court's decision-making responsibility.

Our review of the record reveals extreme alienation; Father has not had contact with Child for over a year. The record supports the court's determinations that the timing of Mother's allegations of sexual abuse are suspect, that there is no evidence to support Mother's claim that Father sexually abused Child, and that Mother has deliberately marginalized Father

in Child's life. She has also isolated Child from Father's extended family and his first wife's (and Child's first adopted Mother's) family.

We share the court's perspective that, although controversial, reunification therapy of the type promoted by Family Bridges is necessary to repair the extensive damage done to the Father/Child relationship. The court may consider the recommendations of the agency and mental health professionals but it is ultimately the court's responsibility to determine what will truly promote Child's best interests. We therefore affirm the court's order.

We rely on Judge Clark's December 22, 2016 opinion to affirm the custody order, and we advise the parties to attach a copy of that opinion in the event of further proceedings.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/20/2017